UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-60323-Cr-Marra/Matthewman

UNITED STATES OF AMERICA,

v.

ADRIAN APODACA,
    a/k/a "Skitz,"

        Defendant.
_____/

FILED by ___ D.C.
NOV 30 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

**PRETRIAL DETENTION ORDER**

    The Court, pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, hereby ORDERS Defendant, ADRIAN APODACA, detained prior to trial. The Court specifically finds that no condition or combination of conditions will reasonably assure Defendant's appearance in court or the community's safety. The Court makes the following findings of fact and statement of reasons for the detention:

    a) The nature and circumstances of the offense charged.

    Defendant is charged by Indictment with attempting to distribute and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count 1); use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958 (Count 2); attemped possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count 3); and Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 4). If convicted, Defendant faces a substantial term in prison, a significant term of

1

supervised release, and a hefty fine. The statutory presumption in 18 U.S.C. § 3142(e) applies here.

    b) The weight of the evidence against Defendant.

The weight of the evidence against Defendant is strong. The Court takes judicial notice of the Indictment and the underlying Criminal Complaint. The Government proceeded by proffer at the hearing and FBI Special Agent Christopher Penn testified. These sources establish as follows. During a FBI undercover investigation lasting from early May through late October of this year, Defendant agreed to participate in what he thought was a criminal organization with white supremacy extremist beliefs. The investigation into Defendant's activities was based upon reports by independent sources that Defendant had a propensity for violence and also based upon law enforcement's suspicion that Defendant committed multiple murders in the past.

While under FBI surveillance, Defendant made recorded statements on various occasions describing his prior involvement with white supremacist groups that fought cartel groups, killed "a lot of people," and pretended to be law enforcement officers in order to steal drugs valued at millions of dollars. On October 5, 2016, Defendant accepted $250 to deliver a duffel bag with undisclosed contents. Defendant claimed to have been armed with a "big ole blade" during the delivery.

On October 12, 2016, Defendant accepted $200 to accompany an undercover agent to a meeting with a purported leader of another criminal organization. Defendant offered to steal the purported leader's car and asked to be supplied with a "can of mace, 9mm, (expletive) pair of zip ties" in order to do so. On October 17, 2016, Defendant accepted $300 to package and deliver what thought was nine kilograms of cocaine.

On October 18, 2016, Defendant agreed to conduct a murder for hire during a meeting with an undercover agent posing as the head boss of the undercover organization. Defendant was told that "Tony" in Georgia had not paid money owed and needed to be made an example. Defendant agreed to murder Tony in exchange for fraudulent identification documents and $5,000 cash. Defendant gave explicit instructions—including in a handwritten letter admitted without objection at the hearing—about the supplies he needed to complete the murder. His supply request list included a high capacity handgun with a suppressor, a gas mask, body armor, at least five to 10 plus magazine rounds, and "bear off."

On October 28, 2016, an undercover agent met Defendant and gave him a bag with some of the requested murder supplies. The undercover agent said the remaining supplies would be given to him in Georgia. Defendant was told the target would possess five kilograms of cocaine and that Defendant was to use his "persuasive powers" to find out the cocaine's location. Defendant agreed. The two individuals then drove from South Florida to Georgia in a vehicle equipped with audio surveillance. They went to a Georgia hotel where they met another undercover agent who gave Defendant a pistol with a silencer that bore an obliterated serial number. Defendant handled the firearm and acknowledged it was what he needed. Defendant was thereafter arrested.

c) Defendant's history, characteristics, and criminal history.

The Court takes judicial notice of the Pretrial Services Report and a 2012 Presentence Investigation Report from a prior federal case against Defendant. Defendant was born in Colorado. He obtained his GED in 1993. He claims to have worked as a self-employed tattoo artist since 1987 and he also claims to have received social security disability payments since

3

1992. He has a history of mental health issues dating back to the age of 13. He has no known significant ties to the Southern District of Florida. He has a teenage child who he has not seen or supported since the child's infancy. As of 2012, Defendant was married to a woman who had ties to white supremacist gangs and was then incarcerated in Arizona following her convictions for burglary and drug possession.

Defendant's criminal history is extensive and includes prior convictions for resisting law enforcement, criminal confinement, pointing a firearm, disorderly conduct, criminal conversion, rioting, street gang activity, and being a felon in possession of a firearm. Defendant's presentence investigation report details the use of alias information and his known association with a number of white supremacist gangs involved in violent criminal activity.

> d) The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release, and the likelihood of Defendant's appearance in court if released.

The Court readily finds that Defendant is a danger to the community and a flight risk. He has not overcome the applicable statutory presumption as he faces serious federal charges alleging his involvement in what he thought was a violent white supremacist organization engaged in violence and illegal drug activity. His documented activities ranged from the transport of and search for what he believed to be large quantities of cocaine to his agreement to commit murder. Throughout the undercover investigation, Defendant demonstrated his very clear willingness to engage in escalating criminal activities, including his agreement to travel across state lines to murder another human being in cold blood. Not only did Defendant agree to commit murder, he also described in great detail the supplies he would need to do so. Defendant is allegedly overheard in recorded conversations describing his participation in a number of other

violent white supremacist organizations. Moreover, it is undisputed that a search incident to Defendant's arrest turned up two knives, black gloves, a garrote wire, and the cash deposit he had been paid to commit murder. He has a history of using alias information and he requested fraudulent identification documents as part of his hired murder fee. These serious allegations and others portray a highly dangerous individual who will likely flee if released from custody.

Based on the above factors, and in view of the applicable statutory presumption of detentio, the Court readily finds that no condition or combination of conditions of release will reasonably assure the community's safety and Defendant's appearance, as required.

Accordingly, IT IS HEREBY ORDERED that Defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity to confer privately with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to the U.S. Marshal for the purpose of a court appearance.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this 30th day of November, 2016.

_____
DAVE LEE BRANNON
U.S. MAGISTRATE JUDGE